**Jirri R. SANDERS Plaintiff**

v.

**FMAS CORP. Defendant**

**No. CIV.A.MJG–00–1128.**

United States District Court,
D. Maryland.

Dec. 21, 2001.

Jirri Sanders, Columbia, MD, pro se.

Steven W. Ray, Ray & Isler, Vienna, VA, or FMAS/Dyna Corp.

## MEMORANDUM AND ORDER

GARBIS, District Judge.

The Court has before it Defendant's Motion for Summary Judgment and the materials submitted by the parties related thereto. The Court finds a hearing unnecessary to resolve the motion.

## I. BACKGROUND[1]

Plaintiff Jirri Sanders ("Plaintiff" or "Ms. Sanders") is a forty-nine year old woman with a history of asthma. Defendant FMAS Corporation ("Defendant" or "FMAS"), an independent subsidiary of DynCorp, is a company that provides information technology support to the health care industry. At all times relevant to this action, FMAS was under contract with the federal Health Care Financing Administration ("HCFA") to provide review and abstraction of medical records at the Clinical Data Abstraction Center ("CDAC") in Columbia, Maryland.

Plaintiff was employed by Defendant as an Abstractor at the CDAC facility from July to December, 1999.[2] CDAC abstractors review medical records, summarize them, and input the summarized information. Under its contract with HCFA, FMAS is required to provide an accuracy rate of at least 95% in the information abstracted at CDAC. To ensure that this requirement is met, FMAS requires its abstractors to perform at a level of 98% accuracy. A sample (five to ten percent) of abstracted records are routinely audited by CDAC Clinical Supervisors each month to ensure that abstractors are performing at the required accuracy level. Any abstractor whose accuracy level falls below 95% is required to attend remedial training and is temporarily removed from her position until the remedial training is completed.

---

1. In the present context, the facts must be taken in the light most favorable to Plaintiff. The Court notes, however, that because Plaintiff has provided neither a comprehendible narration of the events giving rise to the instant action nor any evidence that supports her claim, much of the background provided herein is taken from the Defendant's Memorandum in Support of Motion for Summary Judgment and the supporting evidence attached thereto.

2. There seems to be some confusion about Plaintiff's actual termination date. Plaintiff contends that she was fired in February of 2000 but produces no evidence to support this allegation. Defendant produces conflicting evidence, which in places indicates that Plaintiff was fired in September of 1999 and in other places indicates that she was fired in December of 1999. The disagreement between the parties as to this matter is immaterial to the instant Summary Judgment Motion. For present purposes, the Court will assume that Plaintiff was fired in December of 1999.

Plaintiff began working for Defendant in early June of 1999. Like all newly hired abstractors at CDAC, Plaintiff was required to attend training before commencing her regular abstractor responsibilities. As part of this training, Plaintiff was taught the procedures for summarizing and inputting information and oriented to FMAS's quality control standards detailed above. To complete training and be permitted to commence regular abstractor duties, all FMAS abstractors must pass an examination, which consists of abstracting three sample records, with a minimum rate of 98% accuracy. Plaintiff completed training, passed the examination, and commenced regular abstractor duties on July 23, 1999.[3]

On August 9, 1999, Plaintiff reported for work at 6:30 a.m., her usual arrival time. At approximately 7:00 a.m., Sade Owolabi ("Sade"), an FMAS employee who worked two desks away from Plaintiff, complained that there were ants in the workplace. At approximately 7:15 a.m., Bob Vanco ("Vanco"), a Clinical Supervisor, began spraying bug spray in the area. Shortly thereafter, Plaintiff began having difficulty breathing. She immediately went to Vanco's office to inform him of her allergic reaction to the spray and request medical assistance. Someone called 911, an ambulance arrived, and Plaintiff was taken to Howard County General Hospital. She was treated and released that same day. Prior to this incident on August 9, Plaintiff had not informed anyone at FMAS that she had asthma. *See* Pl. Dep. 108.

Plaintiff did not return to work until August 17, 1999. On August 17 and 18, 1999, Danielle Chappie ("Chappie"), the Clinical Supervisor responsible for monitoring the quality of Plaintiff's data input, met with Plaintiff to discuss Plaintiff's work performance. Chappie had discovered during the monthly audit, which included samples of abstracts prepared by Plaintiff, that Plaintiff's accuracy rating was only 92.36%. During their meetings, Chappie reviewed the audited records with Plaintiff and Plaintiff was unable to locate some of her errors. Chappie then informed Plaintiff that Plaintiff was going to be temporarily removed from her abstractor position until she could complete remedial training, which would most likely be scheduled by the end of the month.

On the morning of August 19, Plaintiff was sitting at her desk when she noticed a strong cologne scent. Two days earlier, Sade had asked Plaintiff whether she was allergic to cheap cologne and informed Plaintiff that she intended to purchase some that day. Plaintiff does not state what her reaction to Sade's question was. When she noticed the cologne scent on August 19, Plaintiff asked Sade whether she had sprayed any cologne. Sade replied, "no, but it is all over the place and I think you should get out of here." Plaintiff began to feel short of breath. She informed her supervisor of the situation and went outside to catch her breath. When Plaintiff returned to her desk approximately thirty minutes later, she was again told by Chappie that she needed to

**3.** Plaintiff contends, but provides no evidence to support her contention, that more than six weeks elapsed between her first day of work and the date on which she completed her training because her training was interrupted when she had to take time off from work due to a medical problem unrelated to the presently alleged disability. In contrast, Defendant claims that Plaintiff was in training for six weeks and failed her final examination several times before passing. Defendant's evidence tends to support this claim. *See* Rodriguez Decl. ¶ 6. However, in the instant summary judgment context, the Court will infer from the allegations and the evidence that Plaintiff's prolonged training period was due to a medical absence.

take a remedial class before she resumed work. Chappie told Plaintiff to leave and not return to work until she was contacted to discuss the scheduling of the remedial class.

On September 3, 1999, Carl Brown, an FMAS Human Resources Administrator, contacted Plaintiff and informed her that the next remedial training class would be held September 7 through September 9, 1999. Plaintiff alleges that Patricia Sellers ("Sellers"), Vice President of Human Resources at FMAS, also called her in early September and said "we need to get you back to work." Plaintiff informed FMAS that she would not be attending the training class for medical reasons.

In October of 1999, Plaintiff commenced a worker's compensation suit against FMAS in relation to the August 9, 1999 bug spray incident. On December 1, 1999, Plaintiff and Defendant participated in an EEOC mediation session, which was arranged pursuant to a charge of disability discrimination Plaintiff had filed with the EEOC sometime in the end of August, 1999. At this time, Plaintiff was offered the opportunity to return to her abstractor position on the condition that she successfully complete remedial training.[4] Plaintiff did not accept this offer, and, consequently, Defendant considered Plaintiff's employment to be terminated.

Plaintiff maintains that she did not attend the remedial training classes because

her doctor had placed her on short-term disability. She claims that on January 13, 2000, she called Sellers to inform her that she was being released from short-term disability and was ready to attend the training class. Sellers remembers receiving a call of this nature from Plaintiff on February 4, 2000 and was surprised because she believed Plaintiff had been terminated months earlier. During the conversation, Sellers told Plaintiff that she would not rehire her because her accuracy rating was below the required level and Plaintiff had refused to attend remedial training classes. After the phone call, Plaintiff called the EEOC and requested that a charge of retaliation be added to her previous complaint.

■ Plaintiff contends that she was fired by FMAS because of her disability and in retaliation for the disability discrimination complaint she filed with the EEOC.[5] Additionally, Plaintiff contends that Sade's spraying of cologne and Vanco's spraying of bug spray was disability harassment for which FMAS is ultimately liable. Plaintiff filed the instant suit on April 18, 2000,[6] alleging a cause of action under the Americans with Disabilities Act (the "ADA"). 42 U.S.C. § 12112(a).[7]

## II. *LEGAL STANDARD*

In deciding a summary judgment motion, the Court must look beyond the

---

4. Plaintiff alleges but produces no supporting evidence that this offer was never made. In contrast, Defendant produces evidence that the offer was made. *See* Sellers Decl. ¶ 8.

5. The EEOC notified Plaintiff by letter dated January 21, 2000, that it was closing its file on her charge because it was unable to conclude from its investigation that Defendant had violated any statutes.

6. Plaintiff filed an additional action against Defendant on June 8, 2000 (MJG-00-1699), which was subsequently consolidated with the

instant action because the two cases involve similar or identical contentions by the parties and common questions of fact and/or law.

7. Although Plaintiff's Complaint included age discrimination in violation of the ADEA, 29 U.S.C. § 621, she nowhere alleges how Defendant discriminated against her on the basis of her age when it fired her. Because Plaintiff was hired by Defendant at the age of 47 and was fired just a few months later at the same age, an age discrimination claim against Defendant is unsupportable.

pleadings and determine whether there is a genuine need for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–53, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the Defendant carries its burden by showing an absence of evidence to support a claim, the Plaintiff must demonstrate that there is a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

An issue of fact must be both genuine and material in order to forestall summary judgment. An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the Plaintiff. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. An issue of fact is material only if the establishment of that fact might affect the outcome of the lawsuit under governing substantive law. *See id.* A mere scintilla of evidence in support of an essential element will not forestall summary judgment. *See id.* at 251, 106 S.Ct. 2505.

## III. *DISCUSSION*

### A. *Wrongful Termination*

#### 1. *Discriminatory Termination on the Basis of Disability*

The ADA was enacted to eliminate discrimination against individuals with disabilities and provides, in pertinent part:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee com-pensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

Entities covered by the ADA include employers, employment agencies, labor organizations, and joint labor-management committees. 42 U.S.C. § 12111(2). It is not disputed that Defendant is a covered entity. A plaintiff establishes a prima facie wrongful discharge claim under the ADA against a covered entity by demonstrating that:

(1) [s]he is within the ADA's protected class; (2)[s]he was discharged; (3) at the time of [her] discharge, [s]he was performing the job at a level that met [her] employer's legitimate expectations; and (4)[her] discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.

*Haulbrook v. Michelin North America*, 252 F.3d 696, 702 (4th Cir.2001) (citing *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 58 (4th Cir.1995)).

■ Plaintiff in the instant suit alleges that her employment with FMAS was terminated because of her asthma in violation of the ADA. Thus, to establish the first element of the prima facie case, Plaintiff must show that her asthma amounts to a disability within the meaning of the ADA.

The ADA defines "disability" as a mental or physical impairment that substantially limits one or more of the major life activities of an individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(2). "Substantially limits" means, inter alia, unable to perform or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that

same major life activity." 29 C.F.R. § 1630.2(j)(1). When evaluating whether an individual is substantially limited in a major life activity, courts are to consider mitigating measures, such as medication, and their impact on the activity. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *Murphy v. United Parcel Service, Inc.,* 527 U.S. 516, 521, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) (plaintiff not substantially limited in any major life activity because high blood pressure was completely controllable with medication).

Examples of "major life activities" are "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). If the major life activity at issue is working, plaintiffs must allege that they are substantially limited in a broad class of jobs. *See Sutton,* 527 U.S. at 491, 119 S.Ct. 2139. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* § 1630.2(j)(3)(i).

Plaintiff does not specify which major life activity her asthma substantially limits. Working and breathing are the only activities that appear to apply. However, in the Fourth Circuit:

> [W]here an ADA plaintiff asserts that she is disabled based on a substantial limitation of a major life activity other than working, but her condition is aggravated solely by her workplace environment, her claim must be assessed under our foreclosure test for a limitation on working.

*Rhoads v. F.D.I.C.,* 257 F.3d 373, 388 (4th Cir.2001) (affirming district court's decision to focus solely on the major life activity of working where asthmatic plaintiff failed to allege specific instances where anything other than her work environment exacerbated her breathing problems).

Even if Plaintiff claims that her breathing is substantially limited, the Court will consider only whether Plaintiff is substantially limited in the major life activity of working because Plaintiff does not allege specific instances of difficulty breathing outside of her work environment.

■ In the Fourth Circuit, asthma may rise to the level of a disability that substantially impairs the major life activity of working; however, to establish the threshold element for an ADA claim, it must be so severe that it generally forecloses the employee's opportunity to obtain a broad class of jobs in her field. *See Rhoads,* 257 F.3d at 388 (citing *Gupton v. Virginia,* 14 F.3d 203, 205 (4th Cir.1994)). Asthma does not amount to a disability within the meaning of the ADA merely because it renders the employee incapable of satisfying the singular demands of a particular job. *See id.* For example, the plaintiff in *Rhoads* suffered from asthma that was exacerbated by cigarette smoke in the workplace. The Fourth Circuit found that the plaintiff was not disabled within the meaning of the ADA merely because her asthma rendered her unable to function in one particular smoke-infested office. *Id.*

Similarly, in the instant case, Plaintiff neither alleges nor produces evidence establishing that her asthma generally forecloses her opportunity to obtain employment in a broad class of jobs. *See Sutton,* 527 U.S. 471, 491, 119 S.Ct. 2139; *Rhoads,* 257 F.3d 373, 388. In fact, Plaintiff admits her asthma is controlled by medication:

> Q: At the time when you started to work at FMAS, was your condition controlled by the medication?
>
> A: Yes.
>
> Q: To a point where you were able to work?
>
> A: Yes.
>
> Q: And without any other accommodations or any changes or necessary

changes in your work environment? Is that correct?

A: That's correct.

Q: Were you, in any other ways, limited in your activities at that point; talking about 1999? You were taking the medications. Were you, in any other way, limited with respect to your lungs or your asthma?

A: No.

Pl. Dep. 73. Plaintiff also testified that she has a new job and that her asthma, which is controlled by medication, causes her no problems at that job. Pl. Dep. 29–30.

Plaintiff cannot plausibly contend that her asthma generally forecloses the opportunity to obtain a broad class of jobs while simultaneously admitting that she has a job and that her asthma is controlled by medication. Plaintiff thus does not produce evidence sufficient to establish that her asthma rises to the level of a disability that substantially impairs her major life activity of working.

Nor can Plaintiff meet the first element of a prima facie ADA case on that grounds that she has a record of a disability. 42 U.S.C. § 12102(2)(B). To prove this, Plaintiff would have to show that she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). Thus, Plaintiff must show that she has a record of an impairment that actually substantially limits her in a major life activity or that she was misclassified as having such an impairment. Plaintiff produces no evidence of such a record. While Plaintiff may have a history of asthma, she does not allege that it substantially limits her in a major life activity and admits that it is controllable with medication. Nor does Plaintiff allege or produce any evidence establishing that she has been misclassified as having such an impairment.

■ To the extent that Plaintiff attempts to establish that she is disabled within the meaning of the ADA because Defendant regarded her as being disabled, her claim also fails. 42 U.S.C. § 12102(2)(C). To demonstrate that FMAS regarded Plaintiff as disabled, Plaintiff would have to show that: (1) Defendant mistakenly believed she had a physical impairment that substantially limited a major life activities; or (2) Defendant mistakenly believed that an actual, nonlimiting impairment substantially limited one or more of Plaintiff's major life activities. *See Haulbrook v. Michelin North America, Inc.,* 252 F.3d 696, 703 (4th Cir.2001). In *Haulbrook,* the Plaintiff, who experienced breathing difficulties arising from workplace chemical exposure, maintained that his employer regarded him as disabled because the employer thought the plaintiff may have to be moved to a different building where he would not be exposed to chemicals. The Fourth Circuit found that the plaintiff failed to establish a disability under the ADA because his employer believed that the plaintiff could continue to perform his job. *Id.* at 704.

In the instant action, Plaintiff does not produce evidence establishing that Defendant regarded her as substantially limited in a major life activity because of her asthma. Plaintiff does not dispute that, following her August 9 and August 19, 1999 asthma attacks, Defendant attempted to schedule Plaintiff for remedial training. It thus appears that Defendant, like the *Haulbrook* defendant, believed plaintiff could continue to perform her job. 252 F.3d at 704. Plaintiff therefore fails to establish that Defendant regarded her as disabled.

In sum, Plaintiff does not produce evidence adequate to establish that she is a qualified individual with a disability according to any definition provided by the

ADA. Thus, Plaintiff fails to establish a crucial element of the prima facie case necessary to establish a claim under the ADA. Even assuming she could establish this element, she does not produce evidence establishing another essential element: i.e., that at the time of her discharge, she was performing the job at a level that met Defendant's legitimate expectations. In contrast, Defendant produces evidence that as of August, 1999 Plaintiff was performing below the accuracy level Defendant requires of all of its CDAC Abstractors. *See* Sellers Decl. ¶¶ 4–6; Rodriguez Decl. ¶¶ 6–10; Chappie Decl. ¶¶ 4–5. Because Plaintiff never attended the required remedial training class to improve her performance, she was not performing her job at the level Defendant legitimately expected when she was terminated, regardless of what her actual termination date was. Although Plaintiff alleges that she was unable to attend the training class because she was on short-term disability, she produces no evidence to support this allegation.

Plaintiff thus does not produce evidence sufficient to establish at least two of the four essential elements of a prima facie claim under the ADA. Her claims under the ADA therefore cannot proceed.

### 2. *Retaliatory Termination*

Plaintiff also alleges that Defendant fired her because she filed a claim of disability discrimination with the EEOC. Retaliation claims are analyzed under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Smith v. First Union Nat'l Bank,* 202 F.3d 234, 248 (4th Cir. 2000). Plaintiff must first establish a prima facie case by showing that: (1) she engaged in a protected activity; (2) Defendant took an adverse employment action against her; and (3) a causal connection existed between the protected activity and

the asserted adverse action. *Von Gunten v. Maryland,* 243 F.3d 858, 863 (4th Cir. 2001) (citing *Beall v. Abbott Labs.,* 130 F.3d 614, 619 (4th Cir.1997)). The burden then shifts to Defendant to produce a legitimate, nondiscriminatory reason for the adverse action. *Id.*

If Defendant can do so, the burden shifts back to Plaintiff to prove that Defendant's purported reason was mere pretext for retaliation. *See DeJarnette v. Corning Inc.,* 133 F.3d 293, 298 (4th Cir.1998). To show that the employer's proffered reason for the challenged action is a mere pretext, the Fourth Circuit requires Plaintiff to establish " 'both that the reason was false, and that discrimination was the real reason' for the challenged conduct." *DeJarnette v. Corning Inc.,* 133 F.3d 293, 298 (4th Cir.1998) (quoting *Jiminez v. Mary Washington College,* 57 F.3d 369, 377–78 (4th Cir.1995)).

■ It is not disputed that Plaintiff engaged in the protected activity of filing a discrimination charge with the EEOC prior to her discharge date. However, Plaintiff fails to produce evidence establishing any causal connection between her filing of the complaint and her termination. If anything, Plaintiff has established only that Defendant knew she had filed a charge of discrimination with the EEOC when it fired her. However, while the employer's knowledge that the employee engaged in the protected activity is a necessary element of a retaliatory discharge claim, knowledge alone is not sufficient to establish the claim. *See Gibson v. Old Town Trolley Tours,* 160 F.3d 177, 182 (4th Cir.1998). Nor is the mere sequence of events, i.e. Plaintiff first filed the EEOC complaint and then was fired, sufficient to establish the necessary causal connection. *See id.* (citing *Bermudez v. TRC Holdings, Inc.,* 138 F.3d 1176, 1179 (7th Cir.1998)

(post hoc ergo propter hoc is not enough to support a finding of retaliation)).

■ Even assuming Plaintiff could establish such a causal connection, Defendant has produced evidence of legitimate nondiscriminatory reasons for the alleged retaliatory action—i.e. it fired her because she was performing below the required accuracy rate and she did not participate in remedial training. *See Von Gunten,* 243 F.3d at 863. Moreover, Plaintiff produces no evidence establishing that these proffered reasons are pretextual and that Defendant's decision to fire her was actually motivated by illegal considerations. *See DeJarnette,* 133 F.3d at 298. Plaintiff's retaliatory discharge claim cannot proceed.

B. *Harassment on the Basis of Disability*

■ To make out a claim of disability harassment, Plaintiff must first show that the allegedly harassing acts of FMAS's employees were: 1) unwelcome; 2) based on her disability; and 3) severe and pervasive enough to alter the conditions of employment and create an objectively hostile or abusive working environment. *See Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183 (4th Cir.2001) (racial harassment). In addition, Plaintiff must establish some basis on which to impute liability to FMAS. *See id.; Amirmokri v. Baltimore Gas and Elec. Co.,* 60 F.3d 1126, 1130 (4th Cir.1995) (national origin harassment); *Dwyer v. Smith,* 867 F.2d 184, 187 (4th Cir.1989) (sexual harassment). The question of whether harassment is sufficiently severe or pervasive is essentially a question of fact to be evaluated in light of the totality of circumstances, but summary judgment is appropriate where the conduct is neither sufficiently severe nor pervasive to create an environment that a reasonable person would find hostile or abusive. *See Hopkins v. Baltimore Gas and Elec. Co.,* 77 F.3d 745, 754 (4th Cir.1996).

■ Plaintiff alleges that Vanco sprayed bug spray and Sade sprayed cologne because they knew Plaintiff had asthma and intended to harass her. However, Plaintiff produces no evidence to support these allegations. Plaintiff does not provide evidence adequate to establish that Vanco or Sade even knew of Plaintiff's "disability" at the time of the August 9, 1999 bug spray incident. Plaintiff testified that prior to this incident, she never informed anyone at FMAS that she had asthma or any other illness. Pl. Dep. 108. Plaintiff relies on the publication of an article in the August 5, 1999 edition of the Columbia Flyer, which discusses Plaintiff's wrongful termination action under the ADA against a former employer which arose out of Plaintiff's allergic reaction to dust and paint in the workplace, to impute knowledge of her asthma to Vanco and Sade. However, she produces no evidence that either Vanco or Sade read the article. While Sade presumably knew of Plaintiff's asthma at the time of the August 19, 1999 cologne incident, Plaintiff produces no evidence adequate to establish that Sade used cologne to harass Plaintiff, or even that Sade actually sprayed the cologne in the workplace. Even if the actions of Vanco and Sade were based on Plaintiff's so-called disability, a reasonable person would not find these actions severe or pervasive enough to amount to an objectively hostile or abusive work environment.

Furthermore, even if a reasonable person could find the conduct of Sade and Vanco sufficient to create a hostile work environment, Plaintiff's claim would fail. In the Fourth Circuit, an employer is liable for a hostile work environment created by its employees "only if the employer knew or should have known of the illegal conduct and failed to take prompt and adequate remedial action." *Andrade v. Mayfair Mgmt., Inc.,* 88 F.3d 258, 261 (4th Cir.1996). Plaintiff produces no evidence

that she informed FMAS management that Sade and Vanco were harassing her, and it would not be reasonable to conclude that management should have known that Sade and Vanco's actions amounted to illegal harassment. Plaintiff's disability harassment claim cannot proceed.

## IV. CONCLUSION

For the foregoing reasons:

1. Defendant's Motion for Summary Judgment is GRANTED.

2. Judgment shall be entered by separate Order.