897 A.2d 1063 (2005)
385 N.J. Super. 448
Carol A. YOUNG, Plaintiff-Appellant,
v.
The HOBART WEST GROUP and Larry Aitken, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 2005.
Decided December 15, 2005.
*1065 Neal M. Unger, Edison, argued the cause for appellant (Neal M. Unger, attorneys; Mr. Unger and Thoreau F. Clark, on the brief).
Vincent N. Avallone argued the cause for respondents (Kirkpatrick & Lockhart, Nicholson Graham, attorneys; Mr. Avallone, of counsel and on the brief; Thomas C. Weisert, on the brief).
Before Judges LINTNER, PARRILLO and HOLSTON, JR.
The opinion of the court was delivered by
HOLSTON, J.A.D.
Plaintiff, Carol A. Young, filed a four count complaint in the Law Division against defendants, The Hobart West Group (Hobart) and Larry Aitken, alleging wrongful termination from her employment as a regional executive (RE) for Hobart in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, in count one on the basis of her gender, in count two on the basis of her age (forty-eight), and in count three on the basis of retaliation for her alleged complaints concerning perceived disparate treatment in the payment of bonuses to branch managers based on their marital status. In count four, plaintiff alleged that defendants' acts constituted the intentional or negligent infliction of emotional distress. On October 8, 2004, after the conclusion *1066 of discovery, the Law Division granted defendants' motion for summary judgment, dismissing all four counts of plaintiff's complaint with prejudice. Plaintiff appeals from that order. We affirm.
Hobart is engaged in the business of providing staffing for businesses of permanent and temporary employees. The temporary staffing includes light industrial positions such as warehouse workers, forklift operators and material handlers.
Plaintiff, age forty-eight at the time of her termination, began working for Hobart as a general manager (GM) and at-will employee on January 30, 1999, by virtue of Hobart's acquisition of her former employer, Solutions Staffing, a company owned by Larry and Florence Walensky. At the time of acquisition, the Walenskys became employees of Hobart and reported directly to Fred Staudmyer, Hobart's president, who was age forty-five at the time of plaintiff's termination.
Plaintiff continued to report to the Walenskys in her position as GM and assisted them in managing their former branches and Hobart's branch in Jersey City. Plaintiff's duties included overseeing the operation of the Montclair, Edison, New Brunswick, Jersey City and Paterson branches, all of which were engaged primarily in light-industrial staffing, and ensuring compliance with Hobart's rules, regulations and sales requirements.
In October 2000, plaintiff informed Staudmyer that she had received a job offer from Stratus Services Group. Staudmyer told her that he wanted her to stay with Hobart, that she was important to the company, that he would promote her to RE, raise her annual salary from $62,000 to $88,000 and expand her management responsibilities. Plaintiff accepted Staudmyer's promotion offer, effective January 30, 2001, and became responsible for managing seven of Hobart's branches including five of the Walenskys' former branches. Plaintiff came under the supervision of Larry Aitken, age forty-one, who was named executive vice president responsible for Hobart's Connecticut, New York, New Jersey and Pennsylvania region, and who reported directly to Staudmyer, filling the role previously occupied by the Walenskys. Larry Curran was responsible for sales in Aitken's region before Aitken's January 2001 promotion. Therefore, when plaintiff began to report to Aitken in January 2001, Aitken, with no objection from plaintiff, made Curran sales manager, responsible for salespeople in all seven of the branches managed by plaintiff, thereby reducing plaintiff's workload. After Aitken and plaintiff were promoted, the Walenskys no longer participated in the management of their former branches.
Plaintiff acted as the buffer between Aitken and the branch managers. As RE, she had access to the financial information of the branches under her supervision. Plaintiff claims that she complained to Larry Walensky about greater bonuses going to married male employees than to unmarried male and female employees. However, Walensky contends that plaintiff never complained to him about any discriminatory bonus policies and denies ever relaying any of plaintiff's concerns to Staudmyer or Aitken. Plaintiff never told Aitken about her perception of sex and marital status discrimination taking place, but did discuss with Aitken the unfairness of the formula for awarding bonuses. Before plaintiff allegedly complained to Larry Walensky, Aitken proposed to Staudmyer on March 26, 2001, that Omar Rios, an unmarried branch manager, should receive a bonus because of his excellent performance. After plaintiff's discussion with Aitken, employees who plaintiff believed were not receiving proper bonuses received an increased bonus with Aitken's assistance.
*1067 During her tenure as RE, plaintiff and the Newark branch manager, Joaquin Colon, began to have problems. Plaintiff met with Aitken, who agreed to change the reporting relationship, as a result of which Colon began to report to Aitken instead of to plaintiff. Aitken claims that the change was a result of plaintiff's inability to work with Colon and Ricardo Ospina, the Newark sales manager. However, plaintiff testified that Aitken made the change because he felt that some Hispanic men do not like to report to female managers.
Because the employment economy in light-industrial staffing was poor in 2001, in the second quarter of 2001 Aitken and Curran designed a sales contest to stimulate branch performance. On April 10, 2001, Hobart's Board of Directors met to discuss first quarter staffing problems and concluded that a continuation in declining revenues may necessitate a reduction in staff. Because the sales contest did not do enough to spark revenue, the Board decided to analyze a means to reduce payroll. The minutes from the April 10, 2001, Board of Director's meeting state:
The Board reviewed the Key Items Report for the staffing business. The Board identified disappointing sales for Q4 2000 and Q1 2001. Fred Staudmyer noted that this was due to a meltdown in Q4 (down from 7% from Q3) which was partially due to the industry downturn and partially due to management. . . . [T]he Board suggested that staff may need to be reduced if revenues did not turn around.
Because the company was under pressure in early 2001 to increase profits by boosting sales or reducing costs, according to Larry Walensky, the easiest and most effective approach was for the company to reduce the "head count" since payroll is the largest company expense. In April-June 2001, Staudmyer recommended to Aitken that he eliminate plaintiff's position as a cost reduction measure because of the declining profit margins in the staffing business, and light-industrial staffing in particular. At the July 18, 2001 Director's meeting, Staudmyer discussed the problems facing the staffing business in the first half of 2001. Staudmyer related that temporary workers were down 9.9% nationally in June 2001 from June 2000 and that reduced earnings and layoffs had become common in the industry. Staudmyer's presentation showed that sales in the company's light-industrial staffing, the primary focus of plaintiff's branches, were expected to decline 12% in 2001 and that the company began to reduce its headcount in the second quarter of 2001 to adjust.
On August 10, 2001, plaintiff was terminated by Aitken, who testified that the reason was "because sales were flat and margins were down." Plaintiff was told by Aitken that her termination was a "corporate decision" because of "economics." In deciding to terminate plaintiff, Aitken considered her performance deficiencies and the probability that he and the branch managers could absorb plaintiff's duties.
Plaintiff testified that she discovered that Larry Curran, a younger employee, and Aitken now performed her previous duties. Aitken stated that he did not know plaintiff's age at the time of her termination or during any period of his supervision of her. Defendants contend that plaintiff was not replaced but, rather, that her former supervisor and subordinates absorbed her duties, in essence eliminating a layer of management.
Several former co-workers told plaintiff after her termination that Aitken remarked that plaintiff's termination was a "mutual decision," that plaintiff was not a "long term" employee because she was going to retire soon and that the company sought employees "long term." Aitken *1068 contends that he explained to the branch managers that he terminated plaintiff to reduce costs, that he wanted the branch managers to stay "for the long haul," and that maybe plaintiff would now decide to retire to Montana. Plaintiff admitted that she and her husband intended to retire to Montana or Wyoming at some point because both enjoyed the outdoors and horseback riding and had discussed this dream for many years both at Solutions Staffing and Hobart. She had not made definite plans of going forward with retirement except that she hoped to do so in "five years" or as soon as her husband retired.
In April 2002, plaintiff began a full-time position for Joulé Staffing and in December 2003 filed her resignation effective March 26, 2004. Plaintiff claims that she made her final decision to retire due to health reasons, although neither of her doctors advised her to resign from Joulé. Plaintiff's husband retired from the Edison Police Department in August 2003, and they listed their New Jersey home for sale in February 2004 and subsequently finalized a contract to purchase a new home in Montana.
The motion judge granted defendants' motions for summary judgment "across the board." The judge determined that Hobart eliminated plaintiff's position due to business needs. The judge found that there was no age or gender discrimination, no retaliation, and no intentional infliction of emotional distress.
In reviewing summary judgment orders, we must decide whether
the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
. . . .
If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a `genuine' issue of material fact for purposes of Rule 4:46-2.
[Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).]
Thus, "the essence of the inquiry . . . is. . . `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 536, 666 A.2d 146 (quoting Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986)).

I
Plaintiff contends that the trial court erred in granting summary judgment because there existed sufficient evidence for a jury to conclude that defendants discriminated against her because of her age in violation of the LAD, and that she established a prima facie case of age discrimination.
In order to establish a prima facie case of age discrimination, plaintiff must demonstrate that: (1) she belongs to a protected class; (2) she performed her job at a level that satisfied Hobart's legitimate expectations; (3) she was discharged; and (4) she was replaced by "a candidate sufficiently younger to permit an inference of age discrimination." Bergen Commercial Bank v. Sisler, 157 N.J. 188, 210-13, 723 A.2d 944 (1999) (internal quotations and citations omitted). Plaintiff argues that the fourth prong of the McDonnell Douglas test[1] stated above and enumerated in Sisler does not have to be demonstrated in order to establish a prima facie case of age *1069 discrimination and that she has established all four prongs of the test.
Here, plaintiff was a member of a protected class because she was age forty-eight at the time Hobart terminated her. In order to establish the second prong of the test, "[a]ll that is necessary is that the plaintiff produce evidence showing that she was actually performing the job prior to the termination." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 454, 867 A.2d 1133 (2005). Because plaintiff produced evidence that she performed in the position until she was terminated, "the slight burden of the second prong is satisfied." Id. at 455, 867 A.2d 1133. Thus, plaintiff provided sufficient evidence to meet her burden on the first three prongs.
Plaintiff contends that she does not have to demonstrate that her position was filled by a sufficiently younger candidate but argues alternatively that, in fact, her position was filled with sufficiently younger persons, namely Aitken and Curran. Plaintiff relies on Petrusky v. Maxfli Dunlop Sports Corp., 342 N.J.Super. 77, 775 A.2d 723 (App.Div.) certif. denied, 170 N.J. 388, 788 A.2d 772 (2001). The Court explained in Sisler that under the LAD "the fourth element . . . require[s] a showing that the plaintiff was replaced with a candidate sufficiently younger to permit an inference of age discrimination." Sisler, supra, 157 N.J. at 213, 723 A.2d 944 (internal quotations and citations omitted). In Petrusky, we made clear that "[t]he focal question is not necessarily how old or young the claimant or his replacement was, but rather whether the claimant's age, in any significant way, `made a difference' in the treatment he was accorded by his employer." Petrusky, supra, 342 N.J.Super. at 82, 775 A.2d 723 (citations omitted); see also Maxfield v. Sinclair Int'l., 766 F.2d 788, 792 (3d Cir.1985) ("[T]he fourth element of the McDonnell Douglas test could be satisfied by proof of either replacement by someone outside the protected class or by someone younger or by other proof that the discharge was because of age.") cert. denied sub nom. Sinclair Int'l. v. Maxfield, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986).
We are satisfied that based on the record in this case, plaintiff cannot establish that her age played a significant role in her termination. The record demonstrates that Hobart terminated plaintiff as a cost reduction measure. After plaintiff's position was eliminated, her duties were assumed by Aitken and the branch managers who previously reported to her. No one was hired to replace plaintiff as RE. Plaintiff alleges that Curran replaced her, but there is no evidence to support this allegation. Curran did not just begin supervising sales in plaintiff's branches after plaintiff's termination but well before her termination. Therefore, plaintiff cannot show either that she was replaced by someone sufficiently younger, or that "age in any significant way made a difference" in the treatment she was accorded by her employer. Even had plaintiff established that her age was a primary factor in Hobart's decision to terminate her, she has not refuted defendants' legitimate business reasons for discharging her. Thus, plaintiff cannot establish a prima facie case of age discrimination.
The decision to eliminate plaintiff's position was a cost reduction measure in response to an economic downturn in the light-industrial staffing business. Hobart's articulated business justification for plaintiff's termination is supported by the record and has not been disputed. The evidence shows that throughout 2001 Hobart considered whether to reduce headcount as a result of an economic downturn and declining profit margins in its staffing business. Because defendants have produced evidence of a legitimate, nondiscriminatory *1070 reason for plaintiff's termination, plaintiff must prove by a preponderance of the evidence that the reason articulated by defendants is not the true reason for her termination but was merely a pretext for age discrimination. Plaintiff can only meet this burden "by persuading the court. . . `that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Sisler, supra, 157 N.J. at 211, 723 A.2d 944 (quoting Murray v. Newark Hous. Auth., 311 N.J.Super. 163, 173, 709 A.2d 340 (Law Div.1998) (citation omitted)). Plaintiff has not met this burden.
First, plaintiff's position was eliminated less than seven months after she was promoted to the position of RE by Staudmyer. Plaintiff was age forty-eight both when she was promoted by Staudmyer and on the date her position was eliminated at Staudmyer's suggestion and with his approval. Courts have rejected age discrimination claims when a plaintiff was both hired and fired while a member of the protected age group. See Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173, 175 (8th Cir.1992) (affirming dismissal of age discrimination claim because it would be "simply incredible, in light of the weakness of the plaintiff's evidence otherwise, that the company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later."); Sanders v. FMAS Corp., 180 F.Supp.2d 698, 702 n. 7 (D.Md.2001) ("Because Plaintiff was hired by Defendant at the age of 47 and was fired just a few months later at the same age, an age discrimination claim against Defendant is unsupportable."). The fact that Staudmyer made both the decision to promote plaintiff to RE in January 2001 and a short time later recommended to Aitken that he eliminate her position due to an economic downturn strongly counters against an inference of age discrimination. It is illogical to suggest that Staudmyer would promote plaintiff in January 2001 and then recommend and approve her termination because of her age only a few months later. See Proud v. Stone, 945 F.2d 796, 798 (4th Cir.1991) (finding that "the fact that the employee was hired and fired by the same person within a relatively short time span . . . creates a strong inference that the employer's stated reason for acting against the employee is not pretextual.").
In addition, both decision-makers were close in age to plaintiff. When Aitken decided to terminate plaintiff's employment, he was age forty-one, only seven years younger than plaintiff. Staudmyer, who recommended that Aitken eliminate plaintiff's position and then approved the decision, was approximately two years younger than plaintiff. Courts have found discriminatory intent lacking where the decision-makers are over forty when the employment decision was made. See Richter v. Hook-SupeRx, Inc., 142 F.3d 1024, 1032 (7th Cir.1998) ("While not dispositive, this Court has found it significant that individuals alleged to have discriminated on the basis of age were themselves members of the protected class." (citation omitted)).
Plaintiff argues that defendants' legitimate, non-discriminatory reasons for her termination were pretextual by pointing to (1) an alleged comment of Aitken; (2) sales contests results; (3) defendants' response to her previously filed Division of Civil Rights proceeding; and (4) plaintiff's question about the economic downturn in the staffing industry. None of these arguments establish pretext.
Plaintiff contends that Aitken told three employees that she was not in it for the "long haul" because she planned on retiring in the near future. Plaintiff submits that a reasonable interpretation of these comments supports an inference of age *1071 discrimination, which in turn supports a finding of pretext. We disagree.
Aitken's alleged comment is similar to the one found insufficient to support an inference of age discrimination in Thorn v. Sundstrand Aerospace Corp., 207 F.3d 383 (7th Cir.2000). One of the plaintiffs in Thorn was terminated as part of a reduction in force (RIF) at the age of fifty. To support his age discrimination claim, the plaintiff relied primarily on deposition testimony from the department head about the criteria he was to use for the RIF. The department head testified that he was to decide "which people [we felt had] the longest-term potential. . . ." Id. at 388. The plaintiff argued that this comment demonstrated that the company was trying to retain the youngest employees. The court rejected this comment as evidence of age discrimination and stated:

Since younger employees tend to be more mobile than older ones, there is no basis for an inference that employers interested in the long-term potential of an employee prefer young to old. But without such an inference [the plaintiff] has no case, and we conclude therefore that summary judgment was properly granted for [the employer] in his case. [Id. at 389-90 (emphasis added); see also Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir.1994) (finding comment that "long-term employees have a diminishing return," could apply equally to employees under the age of 40).]
Employers are entitled to consider the long-term potential of employees when making business decisions. See, e.g., Furr v. Seagate Tech., Inc., 82 F.3d 980, 987 (10th Cir.1996) (future job potential is something an employer can consider as part of a RIF or other business decision and Congress has recognized potential as a legitimate factor distinct from age.) cert. denied, sub nom., Doan v. Seagate Tech., 519 U.S. 1056, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997).
We are satisfied that Aitken's alleged statement concerning plaintiff's future plans to retire and move to Montana is not evidence of discrimination, and does not cast doubt on the legitimate business reasons articulated by defendants for the elimination of her job. Plaintiff admits that she openly discussed her plans to move to Montana while at work. Thus, even if Aitken made the comment, this evidence is not evidence of age discrimination. We are convinced that plaintiff was unable to present sufficient evidence to discredit the legitimate reasons proffered by defendants for plaintiff's termination as merely pretext for age discrimination. See Kelly v. Bally's Grand, Inc., 285 N.J.Super. 422, 432, 667 A.2d 355 (App.Div.1995).

II
Plaintiff argues that the trial court erred in granting defendants' motions for summary judgment because there existed sufficient evidence for a jury to conclude that defendants discriminated against her on the basis of her gender in violation of the LAD.
In order to establish a prima facie case of gender discrimination, plaintiff must establish: (1) she is a member of a protected class; (2) she was performing her job at a level that met Hobart's legitimate expectations; (3) she was terminated; and (4) she was terminated under circumstances that give rise to an inference of unlawful discrimination. Williams v. Pemberton Twp. Pub. Sch., 323 N.J.Super. 490, 733 A.2d 571 (App.Div.1999). Here, plaintiff cannot establish a prima facie case of gender discrimination because she cannot demonstrate the fourth prong, i.e., any circumstance that permits an inference of unlawful discrimination.
*1072 The record indicates that plaintiff's position at Hobart was eliminated as a legitimate cost reduction measure that eliminated a layer of management that Hobart deemed unnecessary. Aitken followed the suggestion of Staudmyer to eliminate plaintiff's position as a cost reduction measure. Plaintiff cannot dispute that Hobart was facing a difficult economic environment in its staffing business in 2001. It is illogical for Staudmyer to have recommended and approved plaintiff's termination based on her status as a woman when he promoted her eight months earlier, knowing that she is a woman.
Plaintiff does not point to any circumstances that support an inference of gender discrimination or that she was treated any differently because she is a woman. Additionally, plaintiff cannot discharge her ultimate burden of persuasion because she cannot refute the legitimate non-discriminatory reason articulated by defendants for her termination, i.e., that she was terminated as part of a cost reduction measure.
Plaintiff bases her claim on the fact that Aitken decided that Joaquin Colon, a branch manager, should report to him instead of her because some Hispanic men do not like working for women. Plaintiff also relies on the alleged observations of Debbie Maruschek and Ana Feliciano that Aitken sometimes referred to women as "broads" and her general allegation that females were sometimes mistreated. However, these contentions do not relate to plaintiff nor do they support an inference that plaintiff's position was eliminated because she is a woman.
Plaintiff's gender discrimination claim essentially is that she is a woman and two men decided to eliminate her position. Such evidence is insufficient to survive a motion for summary judgment in the face of the overwhelming record evidence demonstrating that defendants eliminated plaintiff's position because of declining financial conditions. Plaintiff's gender did not play a role. Accordingly, her gender discrimination claim cannot survive as a matter of law because the circumstances of her termination fail to give rise to an inference of unlawful discrimination.

III
Plaintiff asserts that defendants terminated her in retaliation for complaining that married male employees were compensated at a higher rate than female employees and unmarried male employees.
Pursuant to N.J.S.A. 10:5-12d, it is unlawful to "take reprisals against any person because that person has opposed any practices or acts forbidden under the [LAD]."
[T]he protection against retaliation embodied in the LAD is broad and pervasive, and must be seen as necessarily designed to promote the integrity of the underlying antidiscrimination policies of the Act by protecting against reprisals against `any person' who has sought to protect his or her own rights not to be discriminated against or who has acted in support of such conduct.
[Craig v. Suburban Cablevision, 274 N.J.Super. 303, 310, 644 A.2d 112 (App. Div.1994), aff'd, 140 N.J. 623, 660 A.2d 505 (1995).]
In order to establish a prima facie claim for retaliation under the LAD, plaintiff must demonstrate: (1) that she engaged in protected activity; (2) the activity was known to the employer; (3) plaintiff suffered an adverse employment decision; and (4) there existed a causal link between the protected activity and the adverse employment action. Craig, supra, 140 N.J. at 629-30, 660 A.2d 505. Once a plaintiff establishes a prima facie case of retaliation, the defendants must "articulate a legitimate, *1073 non-retaliatory reason for the decision." Romano v. Brown & Williamson Tobacco Corp., 284 N.J.Super. 543, 549, 665 A.2d 1139 (App.Div.1995). Next, "the plaintiff must come forward with evidence of a discriminatory motive of the employer, and demonstrate that the legitimate reason was merely a pretext for the underlying discriminatory motive." Ibid.
The first prong and "[t]he central element of a retaliatory discharge claim under LAD is that the plaintiff be `engaged in a protected activity, which is known by the alleged retaliator.'" Erickson v. Marsh & McLennan Co., Inc., 117 N.J. 539, 560, 569 A.2d 793 (1990) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193 n. 1, 536 A.2d 237 (1988)). Pursuant to N.J.S.A. 10:5-12d, a person engages in protected activity under the LAD when that person opposes any practice rendered unlawful under the LAD.
Here, plaintiff argues that she complained to Walensky about the allegedly discriminatory bonus practices of Hobart. Walensky denied that plaintiff complained about any discriminatory bonus practices to him. Plaintiff stated that she complained that married men received higher bonuses than married women and unmarried men and women. She concedes that she never complained of a discriminatory bonus practice to Aitken or Staudmyer, the two individuals involved in her termination. In fact, Aitken agreed with plaintiff when she told him of the unfairness of the bonus formula and that there were pay disparities due to the formula used for calculating bonuses. Aitken attempted to correct the bonus formula disparity even before plaintiff allegedly complained to Walensky.
At the time of the alleged complaint to Walensky, Walensky was no longer actively participating in the management of plaintiff's branches. Although plaintiff correctly points out that Walensky was still a corporate executive at the time, Walensky, in addition to denying that plaintiff complained to him, testified that he never informed Aitken or Staudmyer. Thus, there is insufficient evidence that the activity was known to the employer. Moreover, Aitken and Staudmyer were the individuals involved in plaintiff's termination and neither had any knowledge of her stated complaints to Walensky. Therefore, plaintiff cannot establish that Hobart terminated her in response to her engaging in protected activity.
Even if plaintiff's complaints constituted protected activity that was known to Staudmyer and Aitken, her retaliation claim still must be dismissed for failure to prove the fourth prong of causation. Plaintiff is unable to point to any facts to support her retaliatory claim except that she complained and was terminated. However, "`the mere fact that [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two.'" Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir.1997)). Only where the facts of the particular case are so "unusually suggestive of retaliatory motive" may temporal proximity, on its own, support an inference of causation. Ibid. Where the timing alone is not "unusually suggestive," the plaintiff must set forth other evidence to establish the causal link. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir.2000); see also Bowles v. City of Camden, 993 F.Supp. 255, 264 (D.N.J.1998). The temporal proximity of her being terminated four months after her complaint to Walensky is not "unusually suggestive," and plaintiff has not set forth any other evidence to establish *1074 a causal link between her termination and her alleged complaints.
Additionally, plaintiff cannot prove that the reason articulated by defendants for her employment termination was a pretext for unlawful retaliation. Plaintiff's evidence of pretext consists solely of her own unsubstantiated conclusory allegations. The evidence confirms that Aitken was taking steps to remedy the bonus problems before plaintiff spoke to Walensky. Even if plaintiff did complain about pay disparities, it is illogical to argue that she would be fired for raising an issue that defendants admittedly were reviewing. We are satisfied that plaintiff's proofs fail to establish that the reason articulated by defendants for elimination of her position was a pretext for retaliation.

IV
Plaintiff clearly fails to demonstrate the elements necessary to establish the tort of intentional infliction of emotional distress. The elements are:
"(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct. . .;
(2) that the conduct was `extreme and outrageous';
(3) that the actions of the defendant were the cause of the plaintiff's distress. . .; and
(4) that the emotional distress sustained by the plaintiff was severe."
[49 Prospect Street Tenants Ass'n v. Sheva Gardens, Inc., 227 N.J.Super. 449, 474, 547 A.2d 1134 (App.Div.1988) (quoting Simon v. Solomon, 385 Mass. 91, 431 N.E.2d 556, 561 (1982)).]
In this case, plaintiff points to no evidence "that would prove the required elements to satisfy the elevated threshold of a claim for intentional infliction of emotional distress." Cole v. Laughrey Funeral Home, 376 N.J.Super. 135, 147, 869 A.2d 457 (App.Div.2005). There is no evidence that defendants acted intentionally to cause plaintiff harm or with a deliberate disregard with a high degree of probability that emotional distress would follow. The tort of intentional infliction of emotional distress requires emotional trauma that is severe. In Buckley v. Trenton Saving Fund Society, 111 N.J. 355, 544 A.2d 857 (1988), our Supreme Court noted that liability may be imposed where: "The conduct [has been] `so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. at 366, 544 A.2d 857 (quoting Restatement (Second) of Torts, § 46 comment d (1965)). We hold as a matter of law that the conduct referenced here does not meet the enhanced standard of outrage required by Buckley. Aitken's alleged comment that plaintiff was close to retirement and that she was not in it for the long haul clearly is not extreme and outrageous.
Plaintiff also asserts a claim for negligent infliction of emotional distress. To prove negligent infliction of emotional distress, a plaintiff must prove that the "defendant's conduct was negligent and proximately caused plaintiff's injuries." Decker v. Princeton Packet, Inc., 116 N.J. 418, 429, 561 A.2d 1122 (1989). In order to do so, the plaintiff must prove that the defendant owed a duty of care to the plaintiff, which is analyzed in terms of foreseeability. Ibid. This is because "recovery for negligent infliction of emotional harm requires that it must be reasonably foreseeable that the tortious conduct will cause genuine and substantial emotional distress or mental harm to average persons." Id. at 430, 561 A.2d 1122.
Our Supreme Court held that "foreseeability of injury is particularly important in *1075 the tort of negligent infliction of emotional harm. This reflects the concern over the genuineness of an injury consisting of emotional distress without consequent physical injury." Id. at 429, 561 A.2d 1122. Therefore, "there must be `an especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious.'" Id. at 429-30, 561 A.2d 1122 (citation omitted). The Court held that a duty of care arises when a defendant should have foreseen "`fright or shock severe enough to cause substantial injury in a person normally constituted.'" Id. at 429, 561 A.2d 1122 (quoting Caputzal v. Lindsay Co., 48 N.J. 69, 76, 222 A.2d 513 (1966)).
There is insufficient evidence here to support a cause of action for the negligent infliction of emotional distress because there is absolutely no evidence that plaintiff's emotional distress was proximately caused by any actions of defendants. Cole, supra, 376 N.J.Super. at 151, 869 A.2d 457.

V
Because we are convinced that summary judgment was properly granted on the four causes of action alleged in plaintiff's complaint, the issues raised by plaintiff concerning front and back pay and punitive damages are moot and, therefore, we do not address them. See Sagarese v. Holland, 14 N.J. Misc. 652, 186 A. 589 (Sup.Ct.1936).
As respects the discovery rulings of the trial judge that plaintiff contends constituted reversible error, we are satisfied that those rulings were within the broad discretion of the trial court. The law is clear that discovery need not be undertaken when it will not alter the outcome. Minoia v. Kushner, 365 N.J.Super. 304, 307, 839 A.2d 90 (App.Div.) certif. denied, 180 N.J. 354, 851 A.2d 648 (2004). Plaintiff has provided no specification as to how the additional discovery that she requested could affect the outcome of the motion for summary judgment.
Affirmed.
NOTES
[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).