**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0471-20

GAURI NAVARE,

     Plaintiff-Appellant,

v.

ATLANTIC HEALTH SYSTEM,
t/a MORRISTOWN MEDICAL
CENTER,

     Defendant-Respondent,

and

EMMA ATANASIO,

     Defendant.

_____

Argued December 7, 2021 – Decided December 28, 2021

Before Judges Fisher, Currier, and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1613-18.

Damian Christian Shammas argued the cause for appellant (Law Offices of Damian Christian Shammas, LLC, attorney; Kristen Jasket Piper, on the briefs).

Steven F. Ritardi argued the cause for respondent (Carmagnola & Ritardi, LLC, attorneys; Steven F. Ritardi, of counsel and on the brief; Gina Casale, on the brief).

PER CURIAM

Plaintiff Gauri Navare commenced this action in 2018 under the Law Against Discrimination, N.J.S.A. 10:5-1 to -42, alleging defendants Atlantic Health System and Emma Atanasio terminated her employment because of race, ancestry, and ethnicity – plaintiff described herself in the complaint as "Asian of Indian ancestry, and ethnicity" – and to retaliate because plaintiff exercised rights under the New Jersey Family Leave Act, N.J.S.A. 34:11B-1 to -16. After completion of discovery, the trial judge granted defendants' summary judgment motion as to all plaintiff's claims.

Plaintiff appeals the order of summary judgment only insofar as it dismissed her retaliation claim under the Family Leave Act, arguing:

> I. THE TRIAL COURT ERRED IN CONCLUDING THAT DEFENDANT'S PROFFERED REASON FOR TERMINATION WAS ANYTHING OTHER THAN [PLAINTIFF'S] ALLEGED FALSIFICATION OF DOCUMENTATION.
>
> II. THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF FAILED TO DEMONSTRATE PRE-TEXT.

A-0471-20

We find no merit in these arguments and affirm.

Like the trial court, see Townsend v. Pierre, 221 N.J. 36, 59 (2015), we must view the factual record before the judge when he ruled on the summary judgment motion in the light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). In canvassing the record, we conclude, as the judge recognized, that much of what was presented is undisputed, and what was disputed is not relevant.

For example, it is undisputed that plaintiff was first employed by Atlantic in June 2003 and terminated on January 2, 2018. From January 2008 until her termination, plaintiff worked as a clinical nutrition coordinator. In this position, plaintiff supervised and maintained files for the clinical nutrition staff at Morristown Memorial Hospital; this included reviewing staff licenses, as well as staff members' completion of continuing education, time and attendance records, mandatory training records, and satisfaction of required competencies.

Defendant Emma Atanasio was hired by Atlantic in April 2017. She then became and remained plaintiff's supervisor until plaintiff's employment was terminated eight months later.

There is no dispute that: plaintiff requested leave under the Family Leave Act from December 6, to 18, 2017; she had exhausted her available time for that

A-0471-20

calendar year but Atlantic allowed her to borrow 2018 time to cover the shortfall; and, as planned, plaintiff returned to work on December 19, 2017. There is also no dispute that while plaintiff was out on leave, her department was visited by the Joint Commission, an entity which "validates and provides accreditation to hospitals to ensure they are following their policies and general guidelines." Part of plaintiff's role with Atlantic made her responsible for ensuring these requirements were met.

In addition, plaintiff does not dispute that the Joint Commission was unable to find documents during its audit and plaintiff was contacted at home for assistance. As a result of the inability to locate all the documents sought by the Joint Commission, and despite plaintiff's unsuccessful attempts from a distance to guide other employees in their search, Atanasio asked each registered dietician to provide up-to-date registration cards. One dietician – Carolyn Monroe (a fictitious name) – then told Atanasio she was not registered. In response, Atanasio reached out to Atlantic's Human Resource Department, which forwarded copies of Monroe's performance evaluations.

Performance evaluations, like Monroe's, required plaintiff's verification and assurance of the licensure and registration of staff members. Plaintiff stated in Monroe's 2015 evaluation that Monroe maintained and was in good standing

4

on "current appropriate state or federal license/registration"; "maintained registration status through the Commission of Dietetic Registration"; and "will take [RD[1]] exam this year." This last comment was apparently intended to convey that Monroe still had time to take the exam that year. In Monroe's 2016 evaluation, plaintiff gave no response about whether Monroe either maintained "current appropriate state or federal license/registration" or possessed a "certified up to date RD license."

Plaintiff testified at her deposition that her failure to respond to those questions on the 2016 evaluation "might have just been an oversight." She also testified that Monroe never passed the RD registration exam and acknowledged Monroe had been working as a clinical dietician without registration for two years.

Plaintiff testified as well that on December 19, 2017 – the day she returned from family leave – Atanasio asked her to produce the dieticians' competencies. She responded that she would "look for it." Plaintiff did not, however, locate these materials in either the employees' files or her desk drawer, prompting plaintiff to tell Atanasio they "could not be found." The next day, Atanasio expressed that she did not believe plaintiff had done the required competencies.

---

[1] RD is an acronym for registered dietician.

A-0471-20

Atlantic terminated plaintiff's employment on January 2, 2018. Atanasio explained to plaintiff that she thought termination rather than demotion was appropriate because the failures concerning Monroe's evaluation were "outrageous and egregious." Atlantic argues that termination should not have come as any surprise since it warns employees in its policies and procedures that "[t]here are certain types of behavior that are so damaging to the interests of Atlantic . . . that they must be stopped immediately through termination of the offending employee without application of progressive discipline."

In pursuing a claim under the Family Leave Act – like a claim based on the LAD – plaintiff was required to establish a prima facie claim of retaliation by showing: (1) she was engaged in a protected activity; (2) the activity was known to the employer; (3) she suffered an "adverse employment decision"; and (4) the existence of a causal link between the protected activity and the adverse employment action. DePalma v. Bldg. Inspection Underwriters, 350 N.J. Super. 195, 213 (App. Div. 2002).

Considering the evidence in the light most favorable to plaintiff, we assume, as did the trial judge, the presence of the first three prongs of the prima facie test. The controversy here turns instead on whether plaintiff showed "a causal link" between her exercise of family leave time and her termination. If

6

she did, then the court must consider whether Atlantic articulated a legitimate, non-retaliatory reason for the decision to terminate, and, if articulated, whether plaintiff came forward with evidence of a retaliatory motive and demonstrated that the employer's legitimate reason was a mere pretext for the retaliatory motive. Ibid.

In granting summary judgment on the Family Leave Act claim, the judge recognized there was a dispute about whether the inaccurate Monroe evaluation of 2016 was intentionally false or merely contained omissions. The judge correctly recognized that whichever was true did not matter because Atlantic had the right to terminate plaintiff on either basis. While the judge observed that it was "curious that [p]laintiff completed the majority of [Monroe's 2016] evaluation with the exception of critical sections regarding [Monroe's] licensure" after having "careful[ly] noting in the 2015 evaluation" that Monroe "was not registered by including 'will take RD exam this year'" – arguably suggesting he viewed plaintiff's position about the evaluations as tenuous – even plaintiff concedes her 2016 evaluation of Monroe contained "oversights." In short, as plaintiff acknowledges, Atlantic had a legitimate reason for taking adverse employment action. And no matter how couched, the oversights or falsifications were not insignificant. There is no dispute that due to her lack of

A-0471-20

proper licensing, Monroe was demoted and, but for Atanasio's December discovery of the problems with plaintiff's 2016 evaluation of Monroe, Atlantic could have potentially allowed Monroe to continue performing in a position for which she was not licensed, a circumstance that potentially put Atlantic itself in jeopardy.

Plaintiff argues on appeal – either in support of her otherwise lack of evidence on the fourth prong of the prima facie test or as evidence of a pretext for Atlantic's legitimate reason for terminating plaintiff's employment – that her Family Leave Act claim should have survived summary judgment. She argues that a retaliatory inference could be drawn from certain circumstances or statements.

First, plaintiff refers to the fact that Atanasio did not immediately terminate her employment. Instead, Atanasio took a vacation and, during her absence, left to plaintiff the task of approving payroll. We agree with the trial judge that the delegating of this ministerial task – even if it was inconsistent with Atanasio's belief that plaintiff acted dishonestly in completing Monroe's 2016 evaluation – does not give rise to an inference that plaintiff's termination was retaliatory. It may have shown a mistake on Atanasio's part in trusting plaintiff with this ministerial task, but it doesn't follow that the termination was

8

in retaliation for plaintiff taking family leave. There appears no logical nexus between the two circumstances.

Second, plaintiff asserts Atanasio exhibited hostility toward her expressed need for future family leave. Plaintiff stated in her deposition, when asked why she thought she was being retaliated against, that she "made some references to potentially needing an intermittent leave [and] the answer was we'll see when we get to that." This testimony does not reveal the alleged speaker of the "we'll see" comment. And, when deposed, Atanasio said that when plaintiff made a request for family leave, she referred her to the human resources department and, when plaintiff said something about needing leave intermittently, Atanasio said, "[w]hatever you need to do." In assuming as we must the truth of plaintiff's testimony at this stage, Brill, 142 N.J. at 540, a response of "we'll see" when asked about future family leave does not generate a reasonable inference of hostility toward family leave in general, of hostility toward plaintiff's desire to use family leave in the future, or of a retaliatory intention for plaintiff's use of family leave in the past.

Third, plaintiff alludes to a conversation she had with Atanasio about an employee who had taken a leave and not returned to work as planned. Plaintiff told Atanasio this individual was "a good employee," to which Atanasio

rhetorically asked, "how can she be a good employee if she's not here"? Again, this alleged statement includes nothing that would suggest a hostility toward the use of family leave; accepted at face value, the statement only questioned plaintiff's positive view about this individual, who had overextended her leave.

Lastly, plaintiff argues that an inference of retaliation arises from the "temporal proximity" of her return from leave and her termination. Assuming this "temporal proximity" concept is consistent with our jurisprudence – an issue we need not decide – we reject plaintiff's argument because, absent "unusually suggestive" circumstances that cannot be found here, the passage of time in this context is not legally significant. Young v. Hobart W. Grp., 385 N.J. Super. 448, 467 (App. Div. 2005) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997)). As we said in Young, "the mere fact that [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two." Ibid. (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).

The evidence – viewed in a light most favorable to plaintiff – reveals that Atlantic learned of the problem with the Monroe evaluation during or shortly after plaintiff's December family leave had concluded on December 19, 2017,

10

and that plaintiff was terminated two weeks later; it further reveals that Atanasio would have fired plaintiff sooner but, perhaps because of the holidays, human resources suggested she wait until after the first of the year. There is nothing "unusually suggestive" about the timing of the events here. What would have been suggestive is if Atlantic was aware of the inaccurate evaluations months before the family leave, did nothing about it until plaintiff went on family leave, and then terminated her on her return. In that instance, an inference might arguably be drawn that the termination was triggered by the family leave, not the problematic evaluations. The only evidence available here is that Atlantic acted almost immediately after learning of the Monroe situation. That plaintiff's family leave ended at the same time has not been shown to be anything but coincidental. We agree with the trial judge that the timing does not offer a reasonable inference of retaliation, and we find no principled reason to apply this "temporal proximity" concept as the means to upsetting the summary judgment entered here.

We find insufficient merit in plaintiff's other arguments to warrant further discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0471-20