NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2844
_____

SUSAN WONG,
              Appellant

v.

RWJ BARNABAS HEALTH; CLARA MAASS MEDICAL CENTER;
JOHN DOES 1-10; XYZ CORP. 1-10
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-20-cv-05510)
U.S. District Judge:  Honorable Kevin McNulty
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 2, 2024
_____

Before: SHWARTZ, MATEY, and McKEE, <u>Circuit Judges</u>.

(Filed:  December 4, 2024)
_____

OPINION[*]
_____

_____

    [*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Susan Wong appeals the District Court's order granting her former employer Clara Maass Medical Center and its affiliate RWJ Barnabas Health ("CMMC") summary judgment on her race discrimination, failure to accommodate, and retaliatory termination claims. For the reasons below, we will affirm.

I

A

Wong worked as a registered nurse at CMMC from 2003 until her termination on April 25, 2018. In February 2018, she entered the CMMC building for work and collided with a revolving door. She completed her shift and did not seek medical care. However, the next day, and four times thereafter, Wong visited CMMC's Corporate Care department, which treats CMMC employees for work-related injuries and determines whether they can return to work. Under CMMC policy, an employee who fails to return to work after Corporate Care clears her to do so will be terminated.

During her first visit, the Corporate Care physician conducted a physical examination and CT scan and concluded that she was able to return to "full duty." DA81. Despite that physician's clearance, Wong did not immediately return to work. Several days later, she visited Corporate Care again. During this second examination, the physician (1) ordered additional tests and diagnosed Wong with a "head contusion," (2) referred her to a neurologist, and (3) determined that she could return to work in a "modified," "sedentary" capacity. DA86. Wong then delivered to CMMC a note from her personal physician stating that she could not return to work for approximately one

2

week "due to [] personal health" reasons. DA88. When Wong ultimately returned to work, she complained to CMMC that her assigned duties were not sedentary as she was required to make rounds and walk to the pharmacy. She then visited the neurologist referred to her by Corporate Care, who concluded that she should not return to work for another week, but after that week, could return without restrictions.

Wong again returned to Corporate Care for a third examination, during which, at Wong's request, the physician ordered an MRI of her cervical spine and brain, which revealed "mild degenerative changes" and "[s]mall central protrusion[s]" in her cervical vertebrae, but nothing of concern in her brain. DA134. Like the neurologist, the physician cleared her to return to full duty.

Despite being medically cleared to work, Wong did not report as scheduled for the next two shifts. A few days later, a Corporate Care physician examined Wong for a fourth time and she was again told she could return to work without restrictions.[1] Wong did not report to work following the examination. On April 11, 2018, Senior Human Resources ("HR") Assistant Lori Onque sent Wong a letter by certified mail stating,

> Since you have failed to return to work by the agreed date without an approved extension it has been assumed that you have separated [from] your position[.]. . . Unless we hear from you by Wednesday, April 18, 2018[,] your employment will be terminated. You may, however, reapply for employment in the future.

---

[1] On the form sent to her file indicating that Wong was eligible to return to work, she wrote "disagree." DA108.

DA112.  Before Wong received this letter, she was evaluated by her personal neurologist and presented a note from that neurologist to Onque stating that she "[wa]s unable to [return to] work until further notice."  DA115.  Alfred Torres, CMMC's Chief HR Officer, Corporate Care, and CMMC's workers' compensation carrier also received the note.

Despite the warning in the April 11 letter, Wong was not terminated on April 18. On April 24, she returned to Corporate Care for the fifth time, and was examined and cleared again to return to work.[2]  Wong claimed that she tried to deliver her personal neurologist's note to Corporate Care's examining physician, but he "flung" it back at her and declined her request for more testing because he did not want to "order a multi-million dollar workup."  Dist. Ct. Dkt., ECF No. 54-5, at 23.  That same day, Wong (1) informed Onque and HR Director Greg Rivera that she was not ready to return to work due to her continuing symptoms and (2) requested leave.  Onque and Rivera told her that if she did not report to work on April 25, she would be terminated, but could reapply for employment.  After Wong failed to report for work, Torres terminated her but informed her that she could reapply.

Wong testified that she still could not return to work as of July 2021.

B

Wong asserts that beginning in July 2016—a few years before her accident—she experienced race discrimination at CMMC, some of which occurred during her father's

---

[2] Wong wrote "disagree again" on the work status form she was given.  DA121.

4

2016 hospitalization at CMMC and involved remarks about her and her father's Chinese heritage.[3]

She also testified that several doctors made racist remarks towards her in late 2016 and 2017.[4] She reported these remarks to several supervisors and individuals in HR.[5] She also asserts that she received disciplinary warnings and was terminated because she made these complaints.[6] Torres, Rivera, Onque, and others all testified that they were not

---

[3] For example, according to Wong, a nurse treating her father asked Wong if it was acceptable in her culture to look directly into a person's eyes when speaking to them and asked if her father spoke English. Wong reported these comments to supervisors. One of these supervisors informed Wong that the CMMC Chief Medical Officer ("CMO") was investigating the issue.

[4] Specifically, she claims that a doctor described a malfunctioning printer as "slow like a slow boat to China," and wrote in her father's medical chart that he was a "Chinese man from China, who speaks Chinese." Dist. Ct. Dkt., ECF No. 54-5, at 37-38. Wong also claims that this doctor asked her if she wanted to hear a "famous Chinese proverb," stating in a feigned accent, "[l]ife is cheap, toilet paper is expensive." Dist. Ct. Dkt., ECF No. 54-5, at 36. Wong also testified that another physician with privileges at CMMC, approached her and said multiple times that Chinese people are taking over the world. She also testified that the same Corporate Care physician who "flung" her doctor's note back at her once approached her while making a "kowtowing" motion, and after she asked him for a physician referral, responded by saying "Dr. Chen Cheng Chung." DA281.

[5] Specifically, in October 2017, she emailed the CMO about several of these comments, including the "proverb" comments, but received an out of office response. She asserts that she sent him additional emails regarding "the racist work environment," Dist. Ct. Dkt., ECF No. 54-1, at 22 ¶ 97, but the emails she identifies pertain to Wong's dissatisfaction with her father's care and not racist treatment. She also wrote a note to him about the taking-over-the-world comments, but he testified that did not remember this note or the encounter. She asserts that in December 2017, she also complained about race discrimination to an employee involved in personnel decision as well as another HR employee, who told her that she would discuss her race discrimination complaint with "others in [HR] including Onque and Rivera," DA227 ¶ 51. Wong also avers that the day before she was terminated, she spoke with Onque about race discrimination at CMMC.

[6] Wong asserts that after her complaints in the Fall 2016, she received two disciplinary warnings from her supervisor, Heather Reginio: (1) in February 2017, because she did not communicate to the appropriate entity that a patient needed to be

5

aware of her alleged complaints. Additionally, Torres stated that he did not know that Wong filed a workers' compensation claim.

C

After her termination, Wong filed suit asserting (1) disability and race discrimination, failure to provide a reasonable accommodation, and retaliation in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12, and (2) retaliation in violation of New Jersey's workers' compensation statute, N.J. Stat. Ann. § 34:15-39.1.[7] After discovery, CMMC moved for, and the District Court granted, summary judgment. Wong appeals.[8]

_____

seen by a primary doctor, and (2) in March 2017, because she failed to renew a required certification for her job. The record before the District Court reveals that Wong did not complain about race discrimination to Reginio until December 2017, but in her certification to us, Wong says for the first time that she reported race discrimination to Reginio before the February 2017 disciplinary write-up. For the reasons set forth in note 8, we will not consider this certification. Additionally, she avers that, after complaining of discrimination in December 2017, she received another disciplinary write-up regarding her care of a patient. Finally, she avers that she complained of race discrimination to Onque and her workers' compensation claims representative the day before her termination.

[7] Wong also brought Family and Medical Leave Act and common law claims but does not challenge the District Court's dismissal of these claims.

[8] In support of her appeal, Wong presented a certification. We will not consider it because it seeks to expand the record in contravention of Federal Rule of Appellate Procedure 10. Fed. R. App. P. 10(a); In re Cap. Cities/ABC, Inc.'s Application for Access to Sealed Transcripts, 913 F.2d 89, 96 (3d Cir. 1990) ("This Court has said on numerous occasions that it cannot consider material on appeal that is outside of the district court record."). A court of appeals may allow a party to supplement the record on appeal in "exceptional circumstances," such as where "the proffered addition would establish beyond any doubt the proper resolution of the pending issue[s]." Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 226 (3d Cir. 2009) (citation and quotation marks omitted). Although many of the factual assertions in this certification were in the record before the District Court, others were not. Wong does not explain why she did not present these additional facts to the District Court, and thus has not

II[9]

A

We first review the portion of the order granting CMMC summary judgment on Wong's discrimination and failure to accommodate claims.[10] With respect to Wong's discrimination claims, New Jersey has adopted the three-step burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for addressing motions for summary judgment on NJLAD discrimination claims, Victor v. State, 4 A.3d 126, 140-41 (N.J. 2010). At the first step, a plaintiff must make out a prima facie case of

---

established that "exceptional circumstances" justify expanding the record. Furthermore, none of these additional facts "establish beyond any doubt" that Wong is entitled to relief. See id.

[9] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291. We review a district court's order granting summary judgment de novo, Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013), and we view the facts and make all reasonable inferences in the non-movant's favor, Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[10] CMMC argues that Wong failed to preserve her arguments on appeal because her brief lacks citations to the record. Submitting a brief without record citations is inconsistent with federal and local rules. Fed. R. App. P. 28(a)(8)(A); 3d Cir. L.A.R. 28.3(c). However, because we can discern the facts on which Wong relies and we have the entire record before us, we will not reject her arguments due to her failure to comply with these rules. Cf. Se. Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc., 12 F.4th 337, 345 (3d Cir. 2021) (holding that there is a clear preference for merits-based decision making, rather than deciding issues on technicalities, in context of amending pleadings).

7

discrimination, which requires her to show, among other things, that she was qualified and performing the essential functions of the job. Id. at 141.

The undisputed record shows that Wong (1) repeatedly missed work despite being medically cleared to return full duty; and (2) communicated to CMMC that she was indefinitely unable to return to work. Because Wong fails to show that she was able to perform the essential functions of her job, she does not establish a prima facie case for her race and disability discrimination claims. Accordingly, the District Court properly granted summary judgment on those claims.

Similarly, Wong's failure to accommodate claim fails. First, Wong states that she cannot return to work indefinitely and therefore cannot perform the essential functions of her job—a required element for a reasonable accommodation claim. Svarnas v. AT&T Commc'ns, 740 A.2d 662, 674 (N.J. Super. Ct. App. Div. 1999) (holding that plaintiff with excessive absences failed to demonstrate her ability to perform the essential requirements of her job). Second, an employer need not accommodate an employee with an indefinite leave, as a request for such an accommodation is not reasonable. Id. at 673 (holding that "indefinite unpaid leave is not a reasonable accommodation, especially where the employee fails to present evidence of the expected duration of her

impairment"). Therefore, CMMC was properly awarded summary judgment on Wong's failure to accommodate claim.[11]

B

Wong's retaliation claims also fail. Wong asserts that, by issuing disciplinary warnings and then ultimately terminating her, CMMC retaliated against her because she complained of race discrimination, sought an accommodation for her purported disability, and filed a claim for workers' compensation benefits. To recover on a retaliation claim, Wong must first establish a prima facie case by showing that (1) she engaged in a protected activity that was known by the employer; (2) the employer took an adverse action against her; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action. Battaglia v. United Parcel Serv., Inc., 70 A.3d 602, 619 (N.J. 2013).

Wong fails to make out a prima facie case of retaliation based on her racial discrimination complaints. Although her complaints constitute protected activity, see N.J. Stat. Ann. § 10:5-12(d), and she suffered adverse job actions, see Cokus v. Bristol Myers Squibb Co., 827 A.2d 1173, 1180 (N.J. Super. Ct. Law Div. 2002), aff'd, 827 A.2d 1098 (N.J. Super. Ct. App. Div. 2003), she did not adduce evidence demonstrating a causal connection between the two. First, she did not show a causal connection between

---

[11] Wong's interactive process claim also fails. To obtain relief for such a claim, Wong must show that she was able to perform the essential functions of her job with a reasonable accommodation, but here, she sought indefinite leave and thus could not perform her job. Cf. Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 193 (3d Cir. 2009) (holding that, if an employee is not a qualified individual, an employer's engagement in the interactive process is unimportant).

her Fall 2016 complaints and the disciplinary warnings she received in February and March 2017, or between her December 2017 complaint and the January 2018 disciplinary warning. The two- to six-month gaps between Wong's protected activity and adverse employment actions do not suggest a retaliatory motive. See Young v. Hobart W. Grp., 897 A.2d 1063, 1073 (N.J. Super. Ct. App. Div. 2005) (temporal proximity may support an inference of causation only where the case's facts are "unusually suggestive of retaliatory motive" (internal quotation marks and citation omitted)). Furthermore, even if it did, CMMC proffered legitimate, non-retaliatory reasons for her termination, and Ms. Wong failed to offer contrary evidence that its reasons were pretextual. See supra note 6.

Second, with respect to her February and March 2017 warnings, Wong has not shown that the individual who issued those disciplinary warnings knew about her discrimination complaints.

Third, Wong cannot connect her April 24, 2018 complaints of race discrimination to her April 25, 2018 termination because the undisputed record shows that HR discussed Wong's potential termination as early as April 5, 2018, predating the April 24 complaint. See Young, 897 A.2d at 1073 (reasoning that employee failed to establish causation, in part, because her employer sought to address the issue about which she complained prior to her discrimination complaint); LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 234 (3d Cir. 2007) (holding that an employee could not establish causation between her race discrimination complaint and termination because her tense relationship with the supervisor that terminated her predated the race complaint at issue).

Finally, there is no evidence that the employee who decided to terminate her knew about her race discrimination complaints. See Young, 897 A.2d at 1073 (holding that a plaintiff failed to establish a prima facie retaliation case where there was insufficient evidence that she complained to the employees involved in her termination). For these reasons, Wong has not established a prima facie case that CMMC retaliated against her for complaining about race discrimination.

Wong has also not made out a prima facie case of retaliation for requesting an accommodation. Wong's requests for an accommodation are protected activities under NJLAD, see N.J. Stat. Ann. § 10:5-12(d), but she cannot show a causal connection between such protected activities and her termination. No reasonable juror could conclude that CMMC terminated her because she requested an accommodation, given that CMMC terminated her in accordance with its policy to terminate employees who fail to return to work, after being medically cleared to work. See Svarnas, 740 A.2d at 673 (holding that indefinite leave is not a reasonable accommodation). Furthermore, Wong presented no evidence that CMMC terminated her because she sought a reasonable accommodation. For these reasons, Wong's assertion that CMMC retaliated against her for seeking an accommodation fails.

Summary judgment in favor of CMMC was also warranted on Wong's workers' compensation retaliation claim. To establish a prima facie case for workers' compensation retaliation, Wong must show, among other things, that she was discharged

11

in retaliation for making that claim.  Hejda v. Bell Container Corp., 160 A.3d 741, 751 (N.J. Super. Ct. App. Div. 2017); see also N.J. Stat. Ann. § 34:15-39.1.

No reasonable juror could conclude that Wong was terminated for seeking workers' compensation benefits because the record shows that (1) CMMC discharged Wong due to her absences after being cleared for work, not for any reason related to her workplace injury, and (2) the decisionmaker, Torres, was unaware that Wong had filed a workers' compensation claim.  See Galante v. Sandoz, Inc., 470 A.2d 45, 47 (N.J. Super. Ct. Law. Div. 1983) (concluding that plaintiff failed to establish retaliatory motive when his supervisor did not know he filed a claim and plaintiff did not offer other evidence of retaliatory motive), aff'd, 483 A.2d 829 (N.J. Super. Ct. App. Div. 1984).  Accordingly, the District Court property granted CMMC summary judgment on Wong's workers' compensation retaliation claim.

## III

For the foregoing reasons, we will affirm the order of the District Court.