**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0838-23

EDWARD COSTELLO,

    Plaintiff-Appellant,

v.

MYRON CORP., STEVE
KJEKSTAD, and STEVE
KJEKSTAD, jointly,
severally or in the
alternative,

    Defendants-Respondents.

_____

        Argued February 4, 2025 – Decided June 26, 2025

        Before Judges Firko and Bishop-Thompson.

        On appeal from the Superior Court of New Jersey, Law
        Division, Passaic County, Docket No. L-3810-20.

        Steven H. Schefers argued the cause for appellant.

        Darran E. St. Ange argued the cause for respondents
        (Jackson Lewis PC, attorneys; Timothy D. Speedy and
        Darran E. St. Ange, on the brief).

    PER CURIAM

In this employment discrimination action, plaintiff Edward Costello—a former employee of defendant Myron Corporation (Myron) —appeals from two Law Division orders. The first order, dated January 20, 2023, granted Myron and its employees, Vice President of Supply Chain and Product Steve Kjekstad, and Chief Financial Officer and North American President Dan Barron (collectively, defendants), motions for summary judgment and dismissed plaintiff's complaint alleging fraud, wrongful termination, and whistleblower retaliation in violation of the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14.

The second order, dated October 12, 2023, awarded damages to defendants in the amount of $88,690.65 related to expenses incurred for the internal investigation of plaintiff's corporate credit card use, $89,161.20 for reasonable attorney's fees, and $3,284.65 for costs. We hold plaintiff failed to establish a prima facie CEPA claim, and defendants are entitled to all costs, expenses, and reasonable attorney's fees as the prevailing parties. Therefore, we affirm both orders.

I.

We glean the facts from the summary judgment record, viewing the facts in the light most favorable to plaintiff as the non-moving party. Statewide Ins.

A-0838-23

Fund v. Star Ins. Co., 253 N.J. 119, 125 (2023). Plaintiff, a twenty-eight year at-will employee, was employed as the senior director of quality assurance, purchasing, and safety compliance with Myron. In that role, plaintiff was responsible for ensuring Myron's products adhered to state and federal regulations. Myron is headquartered in Maywood.

In February 1999, plaintiff implemented a corporate purchasing card program (PCard Program), which allowed employees to use a corporate purchasing card (PCard) to make "high volume and low dollar," less than $1,000 purchases. The Program's General Policies and Procedures (General Policies) prohibited the use of PCards for "[p]ersonal business, purchases, or identification" and "[t]elephone calls or related services." In plaintiff's signed employment agreement (Agreement), he acknowledged to use the PCard for "approved purchases only and agree[d] not to charge personal purchases." He further agreed to "follow the established procedures for the use of the [c]ard." The Agreement informed plaintiff that the "[f]ailure to do so may result in either revocation of my use of privileges or other disciplinary actions, including discipline in accordance with the [e]mployee [h]andbook."

In early July 2020, plaintiff sought clarification from Barron on the reimbursement process for cellphone expenses. Barron told plaintiff to request

reimbursement through the expense reimbursement process. After Barron's directive, another cellphone expense appeared on plaintiff's PCard. A subsequent review of plaintiff's PCard usage revealed several transactions that appeared to be personal purchases.

On January 16, 2020, plaintiff met with Barron and Human Resources Manager Cathy Vazquez to discuss his "irregular" and "frequent" personal purchases—gift cards, groceries, online transactions, and cellphone bills. When questioned about these purchases, plaintiff initially claimed that all transactions were either legitimate corporate purchases or the result of an inadvertent error. Plaintiff claimed to have "misunderstood" Barron's directive regarding cellphone reimbursements because he paid one cellphone bill with his PCard and the balance of the bill with his supervisor, Kjekstad's card.

Plaintiff further claimed that he purchased gift cards as a means to incentivize employees and reward those employees who had demonstrated hard work, despite the fact that the gift cards were sent to his personal email address. However, he was unable to provide a record of the number of gift cards purchased or a list of employees who received them. Nor was he able to provide information about online purchases that were sent to his children. Plaintiff asked for an itemized list of the amount that he owed Myron and stated that he would

reimburse the company for any inadvertent purchases. During this meeting plaintiff told Barron that he knew Myron had "illegal vinyl's," and "mislabeled" pen factory products. Following the meeting, plaintiff was placed on unpaid administrative leave while an outside firm conducted an internal investigation.

On July 21, 2020, Barron and Vazquez had a teleconference with plaintiff. Plaintiff asserted for the first time that Kjekstad gave him verbal permission to use the PCard for personal purchases in lieu of receiving 401(k) benefits and a bonus in March 2020, but did not provide dates or specifics. The agreement, however, was not memorialized in a memo, email, or text message. In his deposition, Kjekstad denied that he gave him permission to use the PCard for personal purchases. During the teleconference with Barron, plaintiff stated that Myron falsely advertised plastic pens made in China by altering the country of origin to "Made in U.S.A." He also stated that metal pens were mislabeled as "Made in the U.S.A."

During his deposition, plaintiff asserted that he made two reports to Kjekstad about unlawful activities in 2018. The first was that since plaintiff began employment with Myron, it had not properly labeled products in compliance with Proposition 65 ("Prop 65"), the Safe Drinking Water and Toxic Enforcement Act, Cal. Health & Safety Code § 25249.14, which requires

5

businesses to alert consumers by a label about the potential exposure to chemicals that can cause cancer, birth defects, or other reproductive harm on all products sold in California. The second report was the false advertising regarding the plastic pens. According to plaintiff, Myron continued to source the pens in China; however, Myron's practice of altering the country of origin ceased in late 2018 or early 2019.

While the investigation was pending, plaintiff retained counsel. In October 2020, plaintiff's counsel sent a ten-day demand letter to provide a "definitive" status about his employment and threatened to file suit for wrongful termination. On November 12, 2020, plaintiff's employment was terminated for the misappropriation of company funds.

In December 2020, the firm released the report detailing its investigative findings regarding plaintiffs PCard use. The firm reviewed plaintiff's PCard statements from one bank for the period of January 1, 2012, through July 31, 2019, and another from June 1, 2019, through July 31, 2020. A review of the statements from 2012 to 2020 showed plaintiff charged $215,869.98 on both cards to two main vendors—Amazon and Staples—of which $177,789.71 were not corporate purchases. From June 1, 2019, through July 31, 2020, plaintiff charged $40,176.18, of which $38,419.38 were Amazon charges. During that

6

same period, he also purchased $15,637.51 in Amazon gift cards. Plaintiff admitted that he personally used the gift cards and did not give them to Myron employees as bonuses. He charged $629.99 to Staples and $502.96 in "other" charges.

Additionally, the investigation uncovered that plaintiff had access to six PCards assigned to Kjekstad from January 1, 2012, to October 20, 2020. Plaintiff purchased $87,949.51 in goods from the online retailer Newegg. $80,472.21 were non-corporate purchases, of which $31,422.75 were gift cards for his personal use.

On December 9, 2020, plaintiff sued defendants alleging fraud, common law wrongful termination, and whistleblower retaliation in violation of the CEPA. Defendant counterclaimed for breach of contract, promissory estoppel, and unjust enrichment.

Following the close of discovery, defendants moved for summary judgment. The trial court heard oral argument on the summary judgment motion on January 20, 2023. That same day, the court entered an order granting summary judgment in favor of defendants and dismissing plaintiff's complaint with prejudice.

A-0838-23

In the written statement of reasons, the trial court acknowledged neither party disputed plaintiff's at-will employment status.  Nonetheless, the court considered the provision of the Myron Employee Policy Manual which stated: "Employment is for no stated term and is subject to termination at any time at the will of the employee or the company without prior notice and with or without cause."  In opposing defendants' motion, plaintiff failed to argue which exception to the at-will employment general rule applied to this matter.

In analyzing plaintiff's CEPA claim, the court relied on the applicable law that plaintiff's CEPA claim waived any rights pursuant to a common law claim. The court reasoned that plaintiff "likely" had satisfied the requirement for whistleblowing activity in objecting to Myron's marketing practices, but he did not establish a causal link between the 2018 "objections" and his termination in late 2020.  Nor did plaintiff satisfy the burden-shifting framework to prove his termination was a result of a retaliatory motive.  Based on the unauthorized PCard transactions, defendants proved a legitimate business reason for plaintiff's termination.  The court found plaintiff had "provided no evidence or documentation to demonstrate that retaliation for his objections was determinative."

8

Regarding plaintiff's fraud claim, the court explained plaintiff had not shown sufficient evidence to prove that Kjekstad allowed him to freely use the PCard. The court reasoned that plaintiff's "mere assertion" that he was given verbal permission is not clear and convincing evidence of fraud.

On October 12, 2023, the court held a proof hearing. The court heard testimony from witnesses and the parties' arguments, reviewed the affidavit of services, conducted a lodestar analysis, and considered the RPC 1.5 factors. In an oral opinion, the court explained that Myron incurred "significant" attorney's fees and costs in defending and prosecuting this matter. As the prevailing party under the CEPA, defendants were awarded $88,690.65 related to the internal investigation of corporate credit card use, $89,161.20 in reasonable attorney's fees, and $3,284.65 for reasonable costs, as well as pre- and post-judgment interest. This appeal followed.

On appeal, plaintiff raises two arguments for our consideration. He first argues the trial court erred in granting summary judgment and dismissing his complaint. He next argues that trial court erred in awarding damages and attorney's fees and costs. We are unpersuaded by plaintiff's contentions.

II.

We first address plaintiff's contention that the trial court erred by granting summary judgment to defendants. Plaintiff argues that the trial court did not have a rational basis to conclude he failed to carry "his burden under CEPA."[1] He reasonably believed that he established a CEPA claim. Plaintiff's argument is unavailing.

We review a trial court's grant of summary judgment de novo, applying the same standard as the trial court. Thomas Makuch, LLC v. Twp. of Jackson, 476 N.J. Super. 169, 184 (App. Div. 2023) (citing Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021)). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch, 244 N.J. at 582 (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails

---

[1] In his appellate brief, plaintiff did not raise or address wrongful termination or fraud claims. Accordingly, we deem those issues waived and do not address them. See Green Knight Cap., LLC v. Calderon, 469 N.J. Super. 390 (App. Div. 2021) (declining to reach an issue plaintiff had failed to raise or brief on appeal); N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2, (App. Div. 2015) ("An issue that is not briefed is deemed waived upon appeal.").

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  We do not defer to the trial court's legal analysis or statutory interpretation.  RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

CEPA was enacted "to 'protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'"  Hitesman v. Bridgeway, Inc., 218 N.J. 8, 27 (2014) (quoting Dzwonar v. McDevitt, 177 N.J. 451, 461 (2003)). "The statute 'shields an employee who objects to, or reports, employer conduct that the employee reasonably believes to contravene the legal and ethical standards that govern the employer's activities.'"  Allen v. Cape May Cnty., 246 N.J. 275, 289 (2021) (quoting Hitesman, 218 N.J. at 27).

To establish a CEPA claim, a plaintiff must demonstrate that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
>
> (2) he or she performed a "whistle-blowing" activity described in [N.J.S.A. 34:19-3(a)];

(3) an adverse employment action was taken against
him or her; and

(4) a causal connection exists between the whistle-
blowing activity and the adverse employment action.

[Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015)
(quoting Dzwonar, 177 N.J. at 462).]

"[O]nce a prima facie case is established, the burden of persuasion is shifted to the employer to rebut the presumption of discrimination by articulating some legitimate nondiscriminatory reason for the adverse employment action." Allen, 246 N.J. at 290-91 (quoting Kolb v. Burns, 320 N.J. Super. 467, 478 (App. Div. 1999)) (internal quotation marks omitted). "Upon such a showing by the employer, plaintiff has the ultimate burden of proving that the employer's proffered reasons were a pretext for the discriminatory action taken by the employer." Id. at 291 (quoting Kolb, 320 N.J. Super. at 478) (internal quotation marks omitted). "[T]he mere fact that [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two." Young v. Hobart W. Grp., 385 N.J. Super. 448, 467 (App. Div. 2005) (second and third alteration in original) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).

A-0838-23

Here, plaintiff has failed to establish a prima facie claim under CEPA. In regard to the first prong, plaintiff asserts that he reasonably believed Myron engaged in falsely advertising plastic and mislabeling metal pens as "Made in the U.S.A.," as well as changing their country of origin. The complaint did not identify any law, rule, regulation, or public policy defendants are alleged to have violated. Consistent with Dzwonar, the trial court cited 19 U.S.C. § 1304, the federal regulation which governs the labels and markings for the country of origin.[2] 177 N.J. at 463. Additionally, we cite Cal. Bus. & Prof. Code § 17500, which strictly prohibits false or misleading statements in connection with the sale of products and is applicable here in regard to both pens. Based on our review of the record, plaintiff presented an objectively reasonable belief that unlawful activity occurred as to the advertising and labeling of both pens.

Concerning the second prong, plaintiff has established that he engaged in whistleblowing acting. Plaintiff's statements to Kjekstad in 2018 about the false

_____

[2] 19 U.S.C. § 1304 requires that every article of foreign origin (or its container) imported into the United States must be marked in a conspicuous place, legibly, indelibly, and permanently, to indicate the English name of the country of origin at the time of importation. This marking is essential for informing the ultimate purchaser in the United States about the origin of the article. Exceptions to this requirement may apply as specified by law. See 19 U.S.C. § 1304 – Making of Imported Articles and Containers.

marketing and mislabeling of both pens constituted whistleblowing even though no law or regulation was stated.

Plaintiff's termination constituted an adverse employment action. In analyzing the fourth prong, we focus on the "circumstances surrounding the employment action," including temporal proximity between the protected conduct and the adverse employment action. Maimone v. City of Atl. City, 188 N.J. 221, 237 (2006). In the absence of "unusually suggestive" temporal proximity, plaintiff was required to "set forth other evidence to establish the causal link." Young, 385 N.J. Super. at 467. The record demonstrates that, after learning that Myron had ceased mislabeling the pens in late 2018 or early 2019, plaintiff made no additional objections concerning the pens between 2019 and 2020. Absent from the record is any evidence that establishes a causal link between the 2018 objections and defendants' decision to terminate plaintiff in November 2020.

The record amply demonstrates Myron's business justification for plaintiff's termination. The objective credible evidence in the record shows plaintiff misappropriated Myron's funds from January 2016 to July 2020 through the unauthorized use of two PCards assigned to him and the unauthorized access to six of Kjekstad's PCards.

A-0838-23

To rebut defendants' business justification, plaintiff offers nothing beyond his self-serving testimony that Kjekstad's allegedly authorized him to use the PCard for personal purchases. "Conclusory and self-serving [statements] by one of the parties are insufficient to overcome the motion [for summary judgment]." Vizzoni v. B.M.D., 459 N.J. Super. 554, 567 (App. Div. 2019).

Having reviewed the record and guided by the applicable law, we conclude the trial court properly granted summary judgment and dismissed plaintiff's complaint because he failed to establish a prima facie claim under the CEPA. Given our conclusion, we need not address plaintiff's argument that the award of damages and counsel fees and costs should be vacated. Here, we discern no abuse of discretion. Branch, 244 N.J. at 582.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

15

A-0838-23